# In the United States Court of Federal Claims

No. 94-136V
(Filed January 11, 2010)
TO BE PUBLISHED
FILED UNDER SEAL

| | | |
|---|---|---|
| TIMOTHY MCCOLLUM and LEE ANN MCCOLLUM, as Parents and Natural Guardians of GRANT F. MCCOLLUM,<br><br>Petitioners,<br><br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>Respondent. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Review of special master's decision; National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300 aa-1 *et seq.*; damages for parent's lost wages; expenses of home attendant; compensating parent for caring for child; motion for relief from judgment; RCFC 60(b)(6); extraordinary circumstances; deterioration in health of child |

Patricia A. Finn, Piermont, N.Y., for petitioners.

Althea Walker Davis, Senior Trial Counsel, Gabrielle M. Fielding, Assistant Director, Mark Rogers, Deputy Director, Timothy P. Garren, Director, Torts Branch, Civil Division, Tony West, Assistant Attorney General, United States Department of Justice, Washington, D.C., for respondent.

**OPINION AND ORDER**[1]

GEORGE W. MILLER, Judge

Petitioners Timothy McCollum and Lee Ann McCollum, on behalf of their child, Grant F.

---

[1] Pursuant to Rule 18(b) of Appendix B to the Rules of the Court of Federal Claims ("RCFC"), this Opinion and Order is initially being filed under seal. By rule, the parties are afforded fourteen days in which to propose redactions.

McCollum,[2] seek review of an order by Special Master Laura D. Millman denying petitioners' motions to reopen and modify the award petitioners received in March of 2000 under the National Vaccine Injury Compensation Program.  *See McCollum v. Sec'y of Dep't of Health & Human Servs.*, No. 94-136, 2009 WL 2524190 (Fed. Cl. Spec. Mstr. July 27, 2009) (the "Order").  For the reasons stated below, petitioners' motion for review is **DENIED**, and the special master's Order is **AFFIRMED**.

**I.     Background**

Grant McCollum was born on April 21, 1992.  When he was three months old, he received a Diphtheria-Pertussis-Tetanus ("DPT") vaccine, after which he was diagnosed with a seizure disorder and various brain abnormalities.  *McCollum v. Sec'y of Dep't of Health & Human Servs.*, No. 94-136, 1998 WL 338237, at *1-2. (Fed. Cl. Spec. Mstr. June 5, 1998).  In March of 1994, Grant's parents filed a petition seeking compensation from the National Vaccine Injury Compensation Program.  *See* Petitioners' Memorandum of Law in Support of Petitioners' Motion for Review at 6 ("Pets.' Mem.") (docket entry 113, Aug. 26, 2009); Respondent's Memorandum in Response to Petitioners' Motion for Review ("Resp.'s Mem.") at 1 (docket entry 115, Sept. 25, 2009); *see also* National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300aa-1 to -34 (the "Vaccine Act").

After reviewing Grant's case, the special master determined that his injuries were caused by the DPT vaccine and that he was entitled to compensation.  *McCollum*, 1998 WL 338237, at *11; Order, 2009 WL 2524190, at *1.  For two years, the Government and Grant's parents negotiated the amount of damages that would be necessary to compensate for Grant's injuries and provide for his care.  *See* Stipulation between Timothy McCollum and Lee Ann McCollum and the Secretary of Health and Human Services ¶¶ 3, 4, March 14, 2000 ("Stipulation"), *attached as* Ex. A to Petitioners' Memorandum of Law in Support of Plaintiff's [sic] Motion for a Modification of the Judgment (docket entry 107, June 12, 2009) ("Pets.' Mot.").  Ultimately, they reached an agreement and signed the resulting stipulation on March 14, 2000; the special master entered judgment on March 29, 2000, incorporating the terms of the stipulation.  Order, 2009 WL 2524190, at *1.

   *A.     Terms of the Stipulation*

Pursuant to the stipulation, the Secretary of Health and Human Services ("HHS") agreed to pay (1) a lump sum of $607,093.58 to compensate petitioners for previously incurred expenses along with pain and suffering and Grant's lost wages;[3] (2) a payment of $79,205.00 to be placed

---

[2] Petitioners will be referred to collectively as "petitioners"; Grant F. McCollum will be referred to as "Grant."

[3] Petitioners, as grantors, created a trust for Grant's benefit with the $607,093.58 lump sum received pursuant to ¶ 5a of the stipulation (the "management trust"), with Wachovia Bank as trustee.  Order, 2009 WL 2524190, at *6.

in a "reversionary trust," specifically, an irrevocable reversionary,[4] supplemental needs trust,[5] that would pay for Grant's future residential care; and (3) sufficient funds (ultimately determined to be $1,326,959.00) to purchase an annuity contract that would pay for seventeen defined categories of anticipated future expenses. Stipulation ¶¶ 5, 7; Order, 2009 WL 2524190, at *1. Included among these seventeen categories of anticipated expenses were a home health attendant until Grant entered residential care, and then the expenses of his residential facility.[6] Stipulation ¶ 7(b), (f). The stipulation does not address the use of the residential facility expenses in the event that Grant remained at home; instead, in setting up the reversionary trust, the parties entered into a separate agreement (the "reversionary trust agreement") that provided additional terms allowing the residential funds to be used for attendant care if Grant remained at home. Resp.'s Mem. at 5-6.

> B.  *Petitioners' Response to Their Perception of Grant's Changed Needs*

Since the award, Grant's health has deteriorated: Grant's lungs are damaged and he has recently been diagnosed with a cortisol deficiency, leading to a compromised immune system and numerous bouts of "flu, pneumonia and other viruses." Dr. Ann Nunez Aff. ¶¶ 2, 3, Oct. 31,

---

[4] A "reversionary" interest is a type of future interest held by the grantor/transferor of property; it is the interest that "remains in a transferor who owns a vested interest and has made a transfer that does not exhaust the transferor's interest in the property transferred, so that an interest in the transferred property may return to the transferor at some future date." RESTATEMENT (SECOND) OF PROPERTY: DONATIVE TRANSFERS § 1.4 cmt. c (1983). For the trust set up pursuant to ¶ 5b of the stipulation, the Government retains a reversionary interest in the funds, which will revert back into the Vaccine Injury Compensation Trust Fund upon Grant's death. *See* Resp.'s Mem. at 2 n.3.

[5] "A supplemental needs trust is a planning tool used to shelter a severely disabled person's assets for the dual purpose of securing or maintaining eligibility for state-funded services, and enhancing the disabled person's quality of life with supplemental care paid by his or her trust assets." *See In re Abraham XX*, 900 N.E.2d 136, 138 (N.Y. 2008). The reversionary trust was set up with HHS as grantor, PeoplesBank as trustee, and Grant as beneficiary. Order, 2009 WL 2524190, at *6. Pursuant to the terms of the reversionary trust, the parties appointed a medical administrator to provide guidance to petitioners and the trustee regarding the course of treatment he or she believes to be in Grant's best interests. *Id.* Both the parents and medical administrator are permitted to submit requests to PeoplesBank for the payment of benefits. *Id.* The reversionary trust agreement permits amendment of the trust terms if the grantor, trustee, and Grant's guardian agree in writing. *Id.*

[6] Other categories included, for example, "unreimbursable case management, multi-purpose mat, therapy balls, and educational software expenses," "future unreimbursable pulmonary specialist expenses," and "future unreimbursable blood test expenses." *Id.* ¶ 7(a), (k) (n). The $1,326,959.00 figure represented the then-present value of the annuity necessary to pay on an annual basis for all of the expenses described in the seventeen categories.

2007, *attached as* Ex. B to Pets.' Mot.  Grant's worsening condition has led petitioners to conclude that it would no longer be in Grant's best interests for him to be placed in a residential care facility.  *See* Pets.' Mem. at 7; *see also* Lee Ann McCollum Aff. ¶ 16, Oct. 17, 2007 ("McCollum Aff."), *attached as* Ex. to Pets.' Mot.  Petitioners have also decided that because Grant's school-based program will come to an end, he will require two home health attendants.  Pets.' Mot. at 8; McCollum Aff. ¶ 16.

     Petitioners assert that they attempted to reach an agreement with HHS to amend the reversionary trust agreement in accordance with their proposal, but HHS rejected petitioners' plan.  McCollum Aff. ¶ 17.  Their next recourse was to bring a special proceeding in New York State Surrogate's Court, Dutchess County, attempting to amend both the management trust and reversionary trust agreements.  *See In the Matter of the Guardianship of Grant Francis McCollum Pursuant to SCPA Article 17-A*, No. 11748/B (N.Y. Sur. Ct. Sept. 29, 2008) ("Sur. Ct. Order"), *attached as* Ex. B to Reply to Respondent's Response to Petitioners' Motion for a Modification of the Judgment (docket entry 111, July 17, 2009) ("Pets.' Reply").  Specifically, petitioners sought (1) to have an alternate designated standby guardian appointed for Grant, (2) to modify the management trust to permit a disbursement for the purchase of a second home in Florida, and (3) to modify the reversionary trust to both allow payment to Timothy McCollum to act as a second home health aide and for Mr. McCollum's medical insurance.  Sur. Ct. Order at 1-2.  Both the trustee of the management trust, Wachovia, and the trustee of the reversionary trust, PeoplesBank, objected to the petition.  *Id.* at 1, 3.  The Surrogate's Court appointed a guardian ad litem for Grant, who also opposed the petition.[7]  *Id.* at 10-11.

     The New York court permitted petitioners to name an alternate standby guardian for Grant, but denied the remainder of the petition.[8]  *Id.* at 11.  With respect to the reversionary trust, the court held that petitioners had failed to join a necessary party, namely HHS, the trust's grantor.[9]  *Id.* at 13-16.

---

[7] Petitioners sought to change the "designated alternate standby guardian" pursuant to section 1757 of the New York Surrogate's Court Procedure Act.  The alternate guardian is appointed to assume the responsibilities of guardian if petitioners should become unable to serve.  N.Y. SURR. CT. PROC. ACT § 1757(2).  The previous alternate standby guardian consented to the substitution and the trustee of the management trust took no position.   The guardian ad litem was a separate individual appointed by the Surrogate's Court to represent Grant's legal interests.  Sur. Ct. Order at 11.

[8] The court held that the management trust agreement did not authorize investment in real property and that petitioners had not shown that the expenditure was necessary.  Sur. Ct. Order at 12.  The Surrogate's Court also held that petitioners had not shown that they would be unable to purchase the second house with their own funds.  *Id.* at 13.  Petitioners did not reassert this request before the special master.

[9] Petitioners contend that they engaged in extensive negotiations with HHS before filing the action in Surrogate's Court but that HHS eventually rejected their plan.  McCollum Aff. ¶ 17.

Petitioners then filed two motions with the special master seeking to reopen the case in this court pursuant to RCFC 60(b)(6) and to modify the trust "to pay for one additional home hea[l]th aide (Timothy McCollum)." *Id.* at 10 ("[I]t is the desire of [Grant's] father Timothy McCollum, to take an early retirement from IBM so that he may be the secondary home health aide."). They also asked for trust funds to pay $900 per month "to maintain [Timothy McCollum's] health insurance that now covers [Grant] and other family members." McCollum Aff. ¶ 19. Petitioners contend that when they signed the stipulation, they believed that Grant would be able to move to a residential care facility, but the deterioration of Grant's health has made placement in residential care infeasible. Pets.' Mem. at 7. According to petitioners, Grant "would lose the benefit of the reversionary trust" unless the trust is modified. *Id.*; *see* Order, 2009 WL 2524190, at *2.

Relying in part upon congressional repeal of a provision that permitted amendment of vaccine judgments, the special master denied petitioners' motions on July 27, 2009. Petitioners filed a timely motion for review of the special master's Order on August 26, 2009. 42 U.S.C. § 300aa-12(e)(1). Respondent has opposed this motion on the grounds that (1) petitioners cannot amend the reversionary trust agreement in this court, Resp.'s Mem. at 4-7; (2) petitioners may not receive compensation for the wages Mr. McCollum would lose if he were to leave his job to care for Grant, Response to Petitioners' Motion for a Modification of the Judgment at 10-11 (docket entry 109, July 2, 2009) ("Response to Pets.' Mot."); (3) the Vaccine Act does not permit the requested post-judgment amendment of this award, Resp.'s Mem. at 7-9; and (4) in any event, petitioners have not demonstrated the extraordinary circumstances necessary to obtain relief under RCFC 60(b)(6). Resp.'s Mem. at 7-9.

---

They claim that HHS reasoned that it lacked "jurisdiction" to modify the trust agreement. *Id.* The special master, however, referring to the Surrogate's Court order, found that "Article IV(A) of the reversionary trust agreement allows for amendment of the trust as long as the grantor (HHS), trustee (PeoplesBank), and guardians (petitioners) agree in writing." Order, 2009 WL 2524190, at *6; *see* Sur. Ct. Order at 6. In addition, petitioners may seek the advice of the reversionary trust's medical administrator, who advises the parties as to what would be in Grant's best interests. Order, 2009 WL 2524190, at *9.

5

## II. Standard of Review

The court has jurisdiction to review a special master's decision under the Vaccine Act pursuant to 42 U.S.C. § 300aa-12(e). This court will uphold the special master's findings of fact and conclusions of law unless they are "found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," and may "remand the petition to the special master for further action in accordance with the court's direction." 42 U.S.C. § 300aa-12(e)(2)(A) to -(C); *Saunders v. Sec'y of Dep't of Health & Human Servs.*, 25 F.3d 1031, 1033 (Fed. Cir. 1994). The special master's legal conclusions are reviewed *de novo*. *Euken v. Sec'y of Dep't of Health & Human Servs.*, 34 F.3d 1045, 1047 (Fed. Cir. 1994); *Gardner-Cook v. Sec'y of Health & Human Servs.*, 59 Fed. Cl. 38, 44 (2003).

RCFC 60(b)(1) through (b)(5) provide specific grounds on which the court may grant a motion for relief from judgment. RCFC 60(b)(6)—the provision at issue here—permits relief from a final judgment for "any other reason that justifies relief," meaning any reason not provided for in RCFC 60(b)(1) through (b)(5). *Fiskars, Inc. v. Hunt Mfg. Co.*, 279 F.3d 1378, 1382 (Fed. Cir. 2002); *CNA Corp. v. United States*, 83 Fed. Cl. 1, 8 (2008). A ruling upon a 60(b)(6) motion is within the sound discretion of the court, and is reviewed only for abuse of that discretion. *Sioux Tribe of Indians v. United States*, 14 Cl. Ct. 94, 101 (1987), *aff'd*, 862 F.2d 275 (Fed. Cir. 1988). The court will typically grant relief pursuant to RCFC 60(b)(6) only on a showing of "exceptional or extraordinary circumstances." *Louisville Bedding Co. v. Pillowtex Corp.*, 455 F.3d 1377, 1380 (Fed. Cir. 2006) (internal citation and quotation omitted). Thus, as the Supreme Court has summarized:

> Rule 60(b)(6) . . . grants federal courts broad authority to relieve a party from a final judgment upon such terms as are just, provided that the motion is made within a reasonable time and is not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5). The Rule does not particularize the factors that justify relief, but we have previously noted that it provides courts with authority adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice, while also cautioning that it should only be applied in extraordinary circumstances . . . .

*Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863-64 (1988) (internal citations and quotations omitted).

## III. Discussion

Petitioners' filings are not entirely clear regarding what document they seek to amend and the precise relief they request. One way to characterize their demand is for funds from the reversionary trust to pay for a *second* home health aide if Grant remains at home rather than going to residential care. Petitioners concede that they are not *required* to place Grant in a residential facility. Pets.' Mem. at 7. If they do not, the reversionary trust agreement (but not the stipulation) permits the use of the residential care funds to pay for the continued employment of a

6

single home health aide for Grant's care.  Order, 2009 WL 2524190, at *4; McCollum Aff. ¶ 15 ("If [Grant] is not placed in a residential facility, the language of the trust agreement reads that home attendant care and the other above-described costs would be continued to be paid out of the fund.").  The reversionary trust agreement was not, however, incorporated into the judgment in this case.

This Court possesses jurisdiction only to provide relief from its judgment and the Stipulation to the degree that it was incorporated into the judgment.  Resp.'s Mem. at 5.  The agreement between the parties allowing for a *first* home health aide if Grant is not placed in residential care is not contained in either the stipulation or the judgment.  To the extent petitioners wish to amend the reversionary trust agreement to allow for a second aide, respondent is correct that the Court cannot amend the terms of a private agreement between the parties.  The court's authority under RCFC 60(b) extends to granting relief from "a final judgment, order, or proceeding," which the trust agreement is not.

The Court notes, however, that the stipulation specifically directs payment of money "for future unreimbursable residential facility expenses."  Stipulation ¶ 7(f).  If the Court were to order amendment of ¶ 7(f) of the stipulation (as incorporated into the judgment) to require that the funds be directed to, for example, payment for two home health aides, then petitioners could theoretically obtain relief.  *See United States v. United Shoe Mach. Corp.*, 391 U.S. 244, 248 (1968) (discussing the court's inherent authority to modify a stipulated decree "in adaptation to changed circumstances, though it was entered by consent") (quoting *United States v. Swift & Co.,* 286 U.S. 106, 114 (1932) (Cardozo, J.)); *Cygnus Telecomms. Tech. v. Totalaxcess.com, Inc.*, 345 F.3d 1372, 1374 (Fed. Cir. 2003) (concluding that the court has authority to incorporate terms of stipulation into final judgment and retain jurisdiction to police its terms).  The Court will therefore proceed to review the special master's decision denying petitioners' motions.

          *A.*       *Timothy McCollum May Not Receive Compensation for Lost Wages*

As indicated above, petitioners are unclear regarding the relief they request.  On the one hand, petitioners characterize their requested relief as the "redirection" of funds "earmarked for . . . residential treatment" to pay for an "*additional* home health aide," which they claim is necessary to properly care for Grant.  Pets.' Mem. at 7 (emphasis added); Order, 2009 WL 2524190, at *5.  On the other hand, petitioners have stated that they seek to "supplement [Mr. McCollum's] reduced income that will decrease from $80,000 annually to $30,000 upon his early retirement."  McCollum Aff. ¶ 22.  Respondent characterizes petitioners' requested relief as an attempt to "offset Timothy McCollum's lost wages and insurance costs should he choose to retire early and become a 'secondary' home health aide."  Response to Pets.' Mot. at 4.

Assuming for present purposes that petitioners seek to compensate Mr. McCollum for his lost wages, then the special master was correct to deny relief.  The wages a parent forgoes when he or she stays home to care for a child are not recoverable under the Vaccine Act because such

damages are not "actual unreimbursable expenses."[10] 48 U.S.C. § 300aa-15(a)(1)(B); *see Edgar v. Sec'y of Dep't of Health & Human Servs.*, 26 Cl. Ct. 286, 296 (1992) (characterizing parents' lost wages as "opportunity costs" and not permitted as "past unreimbursable expenses"), *rev'd on other grounds,* 989 F.2d 473 (Fed. Cir. 1993); *Hocraffer v. Sec'y of Health & Human Servs.*, No. 99-533, 2007 WL 914914, at *8 (Fed. Cl. Spec. Mstr. Feb. 28, 2007) ("'Lost wages' are not an expense."), *rev'd in part on other grounds*, 2007 WL 5180525 (Fed. Cl. July 13, 2007), *appeal docketed*, No. 2009-5115 (Fed. Cir. July 31, 2009); *Riley v. Sec'y of Dep't of Health & Human Servs.*, No. 90-466, 1991 WL 123583, at *5 (Cl. Ct. Spec. Mstr. June 21, 1991) ("[Petitioner's] lack of income is neither an expense nor has it been incurred.").

Petitioners attempt to distinguish this line of cases by arguing that Mr. McCollum has some special "expertise" as a home health aide. Pets.' Mem. at 9. This expertise, according to petitioners, makes Mr. McCollum "different from a lay parent staying at home to care for a child." *Id.* The Court has found no support for this distinction and petitioners have cited none. Moreover, "expertise" would only go to Mr. McCollum's rate of compensation as a professional home health aide, not whether he would be entitled to lost wages. To the extent that Mr. McCollum seeks to recover lost income resulting from leaving his job to care for Grant, the special master correctly denied that relief.

  B. *Timothy McCollum May Not Receive Compensation for Caring for His Own Child*

Elsewhere petitioners contend that the money they seek is not lost wages, but would simply be compensation for Mr. McCollum's work as a second home health aide. This request, in essence, asks the Federal Government to pay Mr. McCollum to care for his son, and such a request is not within the scope of the Vaccine Act.

The Vaccine Act permits the award of damages for "residential and custodial care and service expenses . . . sufficient to enable the compensated person to remain living at home." 42 U.S.C. § 300aa-15(c). Congress chose to pay for extra services because it did not wish to force young children to be institutionalized. *Shaw v. Sec'y of Dep't of Health & Human Servs.*, 19 Cl. Ct. 334, 341 (1990). Home attendant care provides *assistance* to parents and gives them some relief from the constant needs of an injured child. Home attendant care does not, however, exempt parents from caring for their own children. *See, e.g., Suel v. Sec'y of Dep't of Health &*

---

[10] An "'expense' is [s]omething paid out to attain a goal or accomplish a purpose." *Hocraffer v. Sec'y of Health & Human Servs.*, No. 99-533, 2007 WL 914914, at *8 (Fed. Cl. Spec. Mstr. Feb. 28, 2007), *rev'd in part on other grounds*, 2007 WL 5180525 (Fed. Cl. July 13, 2007), *appeal docketed*, No. 2009-5115 (Fed. Cir. July 31, 2009) (internal quotation omitted); *see also Riley v. Sec'y of Dep't of Health & Human Servs.*, No. 90-466, 1991 WL 123583, at * 5 n.7 (Cl. Ct. Spec. Mstr. June 21, 1991) ("expense" defined by Black's Law Dictionary as "[t]hat which is expended, laid out or consumed. An outlay; charge; cost; price."). "While in losing the opportunity to earn wages the petitioner had certainly suffered an economic detriment, he did not 'pay out' anything, and therefore the lost wages did not qualify as an expense." *Hocraffer*, 2007 WL 914914, at *8 (internal citation omitted).

*Human Servs.*, No. 90-935, 1997 WL 617034, at *16 (Fed. Cl. Spec. Mstr. Sept. 22, 1997) (allowing two hours per day of attendant care while child was in school and eight hours on the weekend); *Alger v. Sec'y of Dep't of Health & Human Servs.*, No. 89-31, 1990 WL 293408, at *10 (Cl. Ct. Spec. Mstr. March 14, 1990) (disallowing request for attendant care "at all times," totaling 112 hours per week when child was not in school).

Paying Mr. McCollum as a second home health aide would not "assist" the parent—he *is* the parent—in caring for Grant. The Court does not underestimate the time or energy necessary to care for Grant or the importance of doing so properly. However, by permitting payment for the services of a home health attendant, the Vaccine Act did not contemplate paying a child's parent for time spent caring for his or her own child. The Vaccine Act does not permit Mr. McCollum to be paid for fulfilling his duties as a parent, regardless of how difficult that may be. Order, 2009 WL 2524190, at *4 ("Petitioners seem unaware that the Vaccine Act does not compensate parents for taking care of their children."); *see* H.R. Rep. No. 99-908, 1986 WL 31971, at *22 (1986) ("Any compensation award for residential and custodial care and service expenses is to be sufficient to allow the compensated person to remain living at home. This provision is not intended to prevent injured persons from receiving appropriate institutional care if they and their families request such services; neither is it intended to provide for the payment of family living expenses, the purchase of a home, or the construction of a major addition. The Committee intends that this provision allow for in-home medical, rehabilitative, and custodial care, and such modifications to existing physical facilities (such as bathroom facilities) as are necessary to ensure that injured persons are not required to be institutionalized for purely economic reasons.").

> C. *Petitioners Have not Shown an Extraordinary Circumstance Sufficient to Justify Relief Pursuant to RCFC 60(b)(6)*

Although ideally petitioners desire compensation for Mr. McCollum, they alternatively request that the Court amend the judgment to allow for payment of a second home health aide, even if it is not Mr. McCollum. Pets.' Reply at 5 ("Grant McCollum needs two home health aides, including either Mr. McCollum or this second full-time health aide. . . . If necessary, they can hire another aide, but they would prefer to have Mr. McCollum care for his son."). They justify this request by asserting that the deterioration of Grant's health is an "extraordinary circumstance" justifying relief under RCFC 60(b)(6), citing to *Gilbert v. Secretary of Health and Human Services,* 51 F.3d 254 (Fed. Cir. 1995). *Gilbert* involved § 300aa-21(a), under which a vaccine petitioner may, within 90 days of entry of judgment, elect not to accept the judgment and pursue a separate civil action. *Gilbert*, 51 F.3d at 255. The petitioner in *Gilbert* failed to meet the 90-day deadline, and moved for relief under RCFC 60(b)(1), seeking to file the election out of time. *Id.* at 257. The Federal Circuit, affirming the trial court, found that relief under RCFC 60(b)(1) was not permitted since the court could not override a specific statutory requirement in the Vaccine Act. *Id.* As the special master pointed out in addressing this same argument, *Gilbert* is not only inapposite, but "has nothing whatever to do with modifying an award of damages." Order, 2009 WL 2524190, at *5.

Moreover, the history of Congressional consideration of the Vaccine Act shows that the deterioration of Grant's health cannot be considered an extraordinary circumstance. As originally enacted, § 2112(f) of the Vaccine Act permitted post-judgment amendment of "insufficient" awards.[11] *See* National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, § 2112(f), 100 Stat. 3755, 3762 (1986). The following year, however, Congress amended the Vaccine Act, repealing that section. Omnibus Budget Reconciliation Act of 1987, Pub. L. No. 100-203, § 4303(d)(2)(A), 101 Stat. 1330-1, 1330-222 (1987); *see* Order, 2009 WL 2524190, at *10 (noting that petitioners have not demonstrated extraordinary circumstances because the repeal of § 2112(f) evinces Congress's intent to limit such post-judgment amendment of awards) (citing *Neher v. Sec'y, Dep't of Health & Human Servs.*, 984 F.2d 1195, 1197-200 (Fed. Cir. 1993)).

Congress later recognized that, due to the 1987 repeal of § 2112(f), vaccine awardees might face worsening health conditions and there would be no means to judicially alter the award. For example, in a 1999 hearing before the House Subcommittee on Criminal Justice, Drug Policy, and Human Resources, an HHS advisor testified regarding his son, David, who had contracted polio from the oral polio vaccine. *See Compensating Vaccine Injuries: Are Reforms Needed?, Hearing before the H. Subcomm. on Criminal Justice, Drug Policy, and Human Res. of the H. Comm. on Gov't Reform*, 106th Cong. at 49 (1999) (testimony of John Salamone). Mr. Salamone stated that a year after the vaccine award, David began experiencing tremors in his arms and hands that doctors attributed to David's polio. *Id.* at 49. Mr. Salamone, referring to § 2112(f), noted that the original 1986 Vaccine Act had provided a way for the awardee to return to the Government and say: "'This is directly related. We have this evidence,' and the Government would work out an arrangement where they could compensate . . . for the needs relating to that additional injury," but, he pointed out, that provision had been repealed. *Id.*

One committee member sympathized with Mr. Salamone's plight, but noted that "[t]here is a great deal of concern that if the present program is changed, children whose conditions have not been caused by the vaccines would receive compensation." *Id*. (statement of Rep. Cummings); *see also id.* at 192 (testimony of Thomas E. Balbier, Jr., Director, National Vaccine Injury Compensation Program) (noting that the Government and petitioner must "develop a life

---

[11] Section 2112(f) of the Vaccine Act, as originally enacted, provided:

(f) REVISION OF AWARD.
    (1) If the court issues a judgment awarding to a petitioner compensation described in section 2115(a)(1)(A) for unreimbursable expenses and the compensation is insufficient to meet such expenses, such petitioner may petition the court to (A) review such award, and (B) increase the award to make it sufficient to meet such expenses or amend the periodic payment schedule established under section 2115, or both.

National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, § 2112(f), 100 Stat. 3755, 3762 (1986).

care plan that will meet the needs of that child for the rest of their life."). In other words, the more time that has passed since the administration of the vaccine, the more difficult it would be for the special master to determine whether the additional symptoms were actually caused by the vaccine. Moreover, allowing adjustments of awards made years before would jeopardize the fund's long-term viability due to increased uncertainty with respect to the finality of prior awards. As the exchange involving Mr. Salamone demonstrates, the repeal of § 2112(f) was not a mistake. And yet, even after this re-examination, Congress declined to amend the statute, leaving the 1987 framework intact. This choice suggests that Congress made an informed judgment to limit amendments to awards, particularly amendments based on changes in the awardees' health. *See, e.g., Ad Hoc Comm. of AZ-NM-TX-FL Producers of Gray Portland Cement v. United States*, 13 F.3d 398, 402 n.9 (Fed. Cir. 1994) (Congress's decision not to amend a statute even though it knew of a potential amendment was evidence that Congress intended to leave the existing scheme intact). That is, Congress's actions show that it intended that a change in the health of the awardee would not constitute an extraordinary circumstance that would permit amendment of an earlier damages award.

The McCollums—like the Salamones—cannot under the Vaccine Act successfully petition this court for an increased award due to their child's deteriorating health.[12] If petitioners

---

[12] Respondent also contends that the legislative history of the Vaccine Act shows that Congress intended to preclude post-judgment revision of awards entirely. Resp.'s Mem. at 9. The Court finds it unnecessary to reach this question, given that petitioners base their Rule 60(b)(6) motion upon the circumstance of Grant's deteriorating health.

The Court notes, however, that respondent's position is not without support. The 1987 repeal of § 2112(f) was part of Congress's effort to fund the vaccine program in a manner that would ensure its long-term viability. *Funding of the Childhood Vaccine Program: Hearing on H.R. 3545 Before the H. Subcomm. on Select Revenue Measures of the H. Comm. on Ways and Means*, 100th Cong. at 10, 11 (1987) (statement of Rep. Henry A. Waxman). In pursuit of that goal, Congress prescribed a system of up-front lump sum payments rather than a pay-as-you-go system, in order to both guarantee long-term payments to awardees without fear that Congress would later fail to pass needed appropriations and to aid manufacturers in predicting liabilities and costs. *See id.* at 38 (statement of John C. Butler, III, Putnam, Hayes & Bartlett, Inc. on behalf of the Am. Acad. of Pediatrics and Merck & Co., Inc.); *id.* at 61 (statement of Jeffrey H. Schwartz, President, Dissatisfied Parents Together).

In amending the Vaccine Act, the Senate considered, but did not pass, a provision that would have permitted vaccine awardees to seek modification of awards "not . . . sooner than two years after the initial compensation award" by application to a board that could "terminate, continue, reinstate, *increase, or decrease compensation previously awarded.*" S. 1907, 100th Cong. § 2, at 14 (1987) (emphasis added). Nonetheless, Congress ultimately enacted the law as it presently stands, a choice suggesting that Congress intended to limit "vaccine petitioners' entitlement to compensation to costs that can be reasonably anticipated at the time of the award." *Neher*, 984 F.2d at 1200; *see also Chapman v. Sec'y of Health & Human Servs.*, No. 01-5007, 7

11

wish to amend the reversionary trust, there is a procedure for doing so. It requires the consent of the grantor and the trustee, neither of whom petitioners have thus far been able to convince of the merits of their plan.[13]   The judgment could *then* be amended to conform to the parties' private agreement.  *See Armstrong v. United States*, 155 Ct. Cl. 177, 180 (1961) (en banc) (holding that the court may modify a stipulated judgment to reflect the parties' subsequent agreement); Amended Judgment, *Long v. Sec'y of Health & Human Servs.*, No. 05-569 (Fed. Cl. Spec. Mstr. June 15, 2007) (granting motion to amend judgment based on petitioners' agreement with HHS regarding change to annuity agreement).  Until then, however, this Court may not use its authority under RCFC 60(b) to override a mandate from Congress.  *See Gilbert*, 51 F.3d at 257.

## CONCLUSION

In sum, petitioners' motion for review must be denied for several reasons.  The relief petitioners seek in this action, whether characterized as lost wages damages or payment to Mr. McCollum as a second home health aide, is not permitted by the Vaccine Act.  Congress has declined to recognize a change in an awardee's health as an extraordinary circumstance justifying relief under Rule 60(b)(6).  Petitioners have therefore failed to meet their burden under that Rule.  For the reasons enumerated in this Opinion and Order, the Court upholds the findings of fact and conclusions of law of the special master in denying petitioners' motions to reopen the case and to modify the judgment pursuant to RCFC 60(b)(6).  Accordingly, petitioners' motion for review is **DENIED**, and the special master's Order of July 27, 2009 is **AFFIRMED**.

**IT IS SO ORDERED.**

                                                  s/ George W. Miller
                                                  GEORGE W. MILLER
                                                     Judge

---

F. App'x 966, 967 (Fed. Cir. Apr. 3, 2001) (petitioner cannot attempt to modify a vaccine award through use of a Rule 60(b) motion).  Allowing either *ex ante* flexibility or *ex post* adjustments would contravene Congress's intent.

[13] In that regard, the guardian ad litem appointed by the Surrogate's Court also opposed petitioners' plan.  Sur. Ct. Order at 10-11; *see* Order, 2009 WL 2524190, at *9.